**Ronnie WEIL et al., Plaintiffs,**

**v.**

**The LONG ISLAND SAVINGS BANK, FSB et al., Defendants.**

**No. 94–CV–1292 (TCP)(VVP).**

United States District Court, E.D. New York.

Nov. 15, 1999.

John B. Amrod, Amrod & Ricci, Garden City, NY, Louis Aloysius Jr. Craco, Jr., Davis Weber & Edwards, P.C., New York, NY, for John McLaughlin, Maureen McLaughlin, Steven S. Paradise, Jane K. Paradise, Louise Versacio, Anna Marie Versacio, David Pilossof, Linda Pilossof, Terence Mooney, Ann Mooney, Kathleen Canavan, Plaintiffs.

Russell E. Brooks, Milbank, Tweed, Hadley, McCloy, New York, NY, for Long Island Savings Bank, FSB, John Confery, Jr., William E. Viklund, Lawrence W. Peters, Bruce M. Barnet, Troy J. Baydala, Clarence M. Buxton, Edwin M. Canuso, Richard F. Chapdelaine, Brian J. Conway, Robert J. Conway, Frederick De Matteis, George R. Irvin, Herbert J. McCooey, Robert S. Swanson, James B. Tormey, Leo J. Waters, Seth H. Waugh, Donald D. Wenk, Astoria Financial Corp., Astoria Federal Savings and Loan, defendants.

Paul F. Corcoran, Davis & Gilbert, New York, NY, for Conway & Ryan, P.C., Power, Meehan & Petrelli, P.C., Power, Meehan & Power, P.C., James J. Power, Pierce J. Power, Robert F. Meehan, defendants.

Paul F. Corcoran, Davis & Gilbert, New York, NY, Thomas P. Puccio, New York, NY, for James J. Conway, Jr., defendant.

Joel Cohen, Stoock & Stoock & Lavan LLP, New York, NY, for Susan Conway Petrelli, defendant.

Thomas P. Puccio, New York, NY, for James J. Conway, III, defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

## MOTIONS

Defendants in this action move for dismissal of the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

This is a class action[1] brought pursuant to the RICO Act (18 U.S.C. § 1964 *et seq.*), the Truth in Lending Act (15 U.S.C. § 1640) ("TILA"); the Real Estate Settlement Procedures Act, 12 U.S.C. § 2614 ("RESPA"); and State law claims for fraud, breach of duty, deceptive acts and practices, negligent supervision, and violations of New York Debtor and Creditor law.

Plaintiffs assert that customers who obtained mortgage loans from a Long Island Bank between the years 1983 and 1992 were unwittingly made to pay inflated legal fees in connection with their mortgages. These fees allegedly financed an illegal arrangement between the bank's CEO and his former law firm whereby the law firm performed all of the bank's mortgage work, in return for which preferment the CEO and his family took payments from the law firm totaling over eleven million dollars.

Plaintiffs Ronnie Weil *et al.* ("plaintiffs") are consumers who obtained residential mortgage loans from defendant Long Island Savings Bank ("LISB") during the period from January 1, 1983 through December 31, 1992. Defendants in the action are as follows:

A. "The Bank Defendants": LISB was a federally chartered mutual savings bank under the United States laws which maintained offices in Queens, and Nassau and Suffolk counties. Astoria Financial Corp. is a Delaware corporation engaged in the business of financial services and is the holding company of Astoria Federal Savings and Loan Association, a federally chartered thrift institution (both Astorias collectively "Astoria"). On September 30, 1998 Astoria acquired LISB by merger and thereafter allegedly succeeded to the liabilities of LISB.

B. "The Conway Defendants": James J. Conway, Jr. ("Conway") was LISB's chairman and CEO from 1980 to 1992, and is a resident of Nassau County. Conway was also allegedly stockholder, director, and member of Conway & Ryan P.C. (the "Law Firm"), described below. Dolores G. Conway is Conway's wife and is a resident of Nassau County ("Mrs.Conway"). Susan Conway Petrelli ("Petrelli") is the daughter of Conway and Mrs. Conway, is an attorney, a resident of Westchester County, New York, and a member of the Law Firm. Denise Whalen ("Whalen") is the daughter-in-law of the Conways, is an attorney, a resident of Nassau County, and a member of the Law Firm. James J. Conway III ("Conway III") is the Conways' son, was at various times an employee of Conway and Ryan P.C., and is a resident of Nassau County.

C. "The Law Firm Defendants": Conway & Ryan P.C., later known as Power, Meehan & Petrelli, P.C. and still later known as Power, Meehan, & Power (collectively "the Law Firm") was a New York professional services corporation with a principal place of business in Nassau County. James J. Power and Pierce Power are brothers, attorneys, and members and officers of the Law Firm. Robert F. Meehan ("Meehan") is an attorney and member of the Law Firm.

D. "The Director Defendants": the Second Amended Complaint lists seventeen individuals alleged to have been LISB directors at relevant times during the period com-

---

1. Plaintiffs are twelve individuals who sue "for themselves and on behalf of all other persons who obtained mortgage loans from the Long Island Savings Bank, FSB during the period January 1, 1983 through December 31, 1992." (Second Am'd Compl. at caption.) They have not yet moved for class certification.

plained of, to be named below as necessary.

The Second Amended Complaint alleges the following. After receipt and approval of a customer's loan application, LISB sent the customer the following: a commitment which included a requirement that the customer pay "the fees of our attorneys and their disbursements, if any;" a Truth–in–Lending Disclosure Statement which disclosed finance charges and incorporated by reference the good faith estimate of settlement costs; a "Good Faith Estimate of Settlement Costs, which stated that the fees payable to the Law Firm represented the cost of the legal services provided by the Law Firm; and a bill from the Law Firm for its 'professional services.'" (Second Am'd Compl. ¶ 54.)

Plaintiffs allege that these representations:

[W]ere false, and [LISB] failed to disclose material facts relating to legal fees its customers were required to pay. Those fees did not reflect the actual cost of any legal services provided to [LISB] and, in fact, exceeded the value of such services. Moreover, a portion of those fees was paid, directly or indirectly, to Conway and his Family pursuant to an unlawful scheme....

(Second Am'd Compl. ¶ 56.) Plaintiffs allege that the scheme defrauded them and used the proceeds "to fund bribes, kickbacks and unearned fees to Conway and his Family." (*Id.* ¶ 57.)

The scheme allegedly ran as follows. Conway, who held a 65% interest in the Law Firm before becoming CEO of LISB, sought to avoid the pay cut which resulted from his move to LISB. (*Id.* ¶ 59.) In order to do so, Conway:

[Caused the Law Firm] to pay him an annual salary, even though he performed no services.... In addition, he caused the Law Firm to employ, and to remit a portion of its profits to [Petrelli and Whelan] even though at various times they provided minimal or no ser-

vices for the Law Firm. Conway also caused the Law Firm to hire [Conway III] as a paralegal at an annual salary of $144,000, even though he rarely came into the office or performed any work.

The quid pro quo for this arrangement was an agreement by Conway to make the Law Firm the exclusive law firm for [LISB] in connection with residential mortgage loans during [the period complained of]. [LISB], in turn, required plaintiffs.... to · pay [its] legal fees in connection with those transactions. In this way, plaintiffs ... funded the payments received by Conway and his Family from the Law Firm pursuant to this arrangement.

In all, Conway and his Family received more than $11 million from the Law Firm during the [period complained of].... In addition, Conway continued to utilize the Law Firm's American Express credit card while he was Chairman and Chief Executive Officer of [LISB].

(*Id.* ¶¶ 59–61.) Plaintiffs further allege that the director defendants "knew or should have known about the unlawful scheme" based on disclosures Conway made to the Office of Thrift Supervision ("OTS"). (*Id.* ¶ 63.) They allege that following his investigation by the OTS in 1992 and 1993, Conway was banned for life from the banking business in March 1994, and was required to pay $1.3 million to LISB. (*Id.* ¶ 64.)

The Second Amended Complaint includes twelve counts as follows.

(1) Violation of 18 U.S.C. § 1962(c) against Astoria, LISB, Conway, the Law Firm and Law Firm Defendants, and the Director Defendants: these defendants conducted an enterprise in fact consisting of LISB and the Law Firm, which functioned as a continuing unit for the common purpose of conducting LISB's mortgage business. The pattern of activity consisted in part of a scheme to defraud plaintiffs involving mail

fraud in violation of 18 U.S.C. § 1341, to wit (specifically listed) mailings containing the affirmative misrepresentations regarding the legal fees described above, and wire fraud in violation of 18 U.S.C. § 1343, to wit (generally stated) telephone calls between the defendants and plaintiffs concerning the transactions. Conway allegedly conceived and directed the enterprise, LISB was a member of the enterprise and made material misrepresentations, the Law Firm and Law Firm Defendants actively participated in carrying out the fraud, and the Director Defendants controlled LISB and either knew and acquiesced in the fraud or consciously avoided knowledge thereof. (*Id.* ¶¶ 66–71.)

(2) Violation of 18 U.S.C. § 1962(c) against Astoria, LISB, Conway and the Law Firm Defendants, with the Law Firm as the enterprise and the pattern of activity described in (1). (*Id.* ¶¶ 75–81.)

(3) Violation of 18 U.S.C. § 1962(c) against Conway, the Law Firm, and the Law Firm Defendants, with LISB as the enterprise and the pattern of activity described *supra,* as well as commercial bribing and bribe receiving in violation of New York law. (*Id.* ¶¶ 82–88.)

(4) Violation of 18 U.S.C. § 1962(b) against Astoria, LISB, Conway, and the Law Firm Defendants in that they acquired or maintained an interest in or control of the RICO enterprise consisting of the Law Firm, which engaged in the pattern of activity described in (1). (*Id.* ¶¶ 89–95.)

(5) Violation of 18 U.S.C. § 1962(d) against Astoria, LISB, Conway, the Law Firm, the Law Firm Defendants and the Director Defendants in that they conspired to violate the RICO statute. (*Id.* ¶¶ 96–100.)

(6) Violation of the Truth in Lending Act, 15 U.S.C. ¶ 1601 *et seq.* ("TILA") against Astoria and LISB: as "creditors" within the meaning of TILA, it is alleged that these defendants failed to make the requisite accurate disclosures regarding the amount of any finance charge associated with the mortgage loans, of which the legal fees constitute a portion. This failure injured plaintiffs "in that they have been induced to pay money to the Law Firm under the fraudulent pretense that the payments were for legal services rendered to LISB" when in fact the payments were used to make payments to Conway and his family. (*Id.* ¶¶ 101–106.)

(7) Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. ¶ 2601 *et seq.* ("RESPA") against Conway, the Law Firm, the Law Firm Defendants, Mrs. Conway, and Conway III: the legal fees were "real estate settlement services" within the meaning of RESPA and the Law Firm and Law Firm Defendants violated RESPA by paying "bribes, kickbacks, and unearned fees" from the legal fees, and the Conways violated RESPA by accepting the fees. (*Id.* ¶¶ 107–113.) The parties filed a notice of dismissal, signed on April 21, 1999, dismissing Count VII asserted against Denise Whalen, Dolores Conway and James J. Conway III.

(8) Common Law Fraud against Astoria, LISB, Conway, the Law Firm, Law Firm Defendants, and Director Defendants: LISB (knowingly or with reckless disregard for falsity) directed false statements to plaintiffs representing that the legal fees were for services actually rendered to LISB in connection with the loans, with the intention that plaintiffs would believe the statements and rely on them; plaintiffs relied on the

misrepresentations but not have done so had they known of the actual use for the fees. (*Id.* ¶¶ 114–121.) The parties filed a notice of dismissal, signed on April 21, 1999, dismissing Count VIII as against Denise Whalen.

(9) Breach of Duty against Astoria and LISB: these defendants were in a position of control and responsibility in the mortgage transactions and thus had a duty to ensure that the legal fees were bona fide and reasonable; the plaintiffs reposed trust and confidence in these defendants which also gave rise to such a duty. The fees were at least partially unreasonable and fraudulent and LISB knew or should have known of this fact, and thus breached its duty to plaintiffs. (*Id.* ¶¶ 122–126.)

(10) Violation of N.Y.Gen.Bus.Law § 349 against Astoria, LISB, Conway, the Law Firm, the Law Firm Defendants, and the Director Defendants: these defendants "engaged in materially deceptive acts and practices aimed at consumers and the public," including wilfully misrepresenting the nature of the legal fees; plaintiffs relied on such misrepresentations and thus paid fees which they would not otherwise have paid. (*Id.* ¶¶ 127–131.) The parties filed a notice of dismissal, signed on April 21, 1999, dismissing Count X as against Denise Whalen.

(11) Negligent Supervision against Astoria, LISB and the Director Defendants: these defendants had a duty to use reasonable care in the management of LISB and the supervision of Conway, which duty they breached by negligently allowing the reasonably foreseeable scheme

to proceed as it did. (*Id.* ¶¶ 132–138.)

(12) Violation of New York Debtor and Creditor Law against all defendants: "defendants have made conveyances or incurred obligations without fair consideration when they intended ... they would incur debts beyond their ability to pay as they mature, within the meaning of New York Debtor and Creditor Law § 275." (*Id.* ¶¶ 139–142.) The parties filed a notice of dismissal, signed on April 21, 1999, dismissing Count XII asserted against Denise Whalen, James J. Conway III, Bruce M. Barnet, Troy J. Baydala, Clarence M. Buxton, Edwin M. Canuso, Richard F. Chapdelaine, John J. Conefry, Jr., Brian J. Conway, Robert J. Conway, Frederick DeMatteis, George R. Irvin, Lawrence W. Peters, Robert S. Swanson, Jr., James B. Tormey, William E. Viklund, Leo J. Waters, Seth H. Waugh and Donald D. Wenk.

## DISCUSSION

Several groups of defendants move for dismissal: (i) the Bank Defendants and the Director Defendants; (ii) Mrs. Conway and Whalen (iii) Conway and the Law Firm Defendants; and (iv) Conway III.[2] Each group's Motion is discussed separately below.

### I. The Bank and Director Defendants

#### A. Rule 12(b)(6)

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must accept all allegations in the complaint as true and draw all inferences in favor of the non-moving party.

**2.** As per the notice of dismissal signed on April 21, 1999, the claims against Conway III have been dismissed. One might well question the wisdom of this action assuming the truth of the allegations that he was a no-show

paralegal earning $144,000 per year which is more than U.S. District Judges are paid for their services. Nevertheless, as such, no further discussion as to Conway III is necessary.

*Wynn v. Uhler*, 941 F.Supp. 28, 29 (N.D.N.Y.1996). A court should not dismiss a complaint unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim. *Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F.Supp. 765, 769 (E.D.N.Y.1995).

## B. RICO Claims

The Bank and Director Defendants make eight arguments for the dismissal of the RICO claims: (1) failure to state a claim for mail and wire fraud because no material misrepresentation, no scienter, and no facts supporting a scheme to defraud are alleged; (2) plaintiffs did not suffer injury "by reason" of the alleged RICO violations; (3) statute of limitations; (4) failure to plead fraud with particularity; (5) Count I should be dismissed because there is no association-in-fact alleged between the Bank and Law Firm; (6) Counts I and II should be dismissed because there is no allegation that these defendants participated in the enterprise's operation or management; (7) Count IV should be dismissed because no underlying facts are alleged to the effect that these defendants acquired or maintained an interest in the Law Firm and no injury by reason of such acquisition has been alleged; and (8) the RICO conspiracy count should be dismissed because there are no underlying RICO violations and because these defendants did not enter into any agreement or commit the overt acts necessary for liability.

The Second Circuit has held that:

To state a claim for damages under RICO a plaintiff has two pleading burdens.... First, the plaintiff must assert that the defendant has violated 18 U.S.C. § 1962 (1988), the substantive RICO statute. Specifically, it must be alleged: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or "foreign commerce." The plaintiff's second "pleading burden" is to allege that he was "injured in his business or property by reason of a violation of section 1962."

*Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir.1990) (citing 18 U.S.C. § 1962(a)–(c) (1976); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983)).

As to the second burden, proximate cause is also an element of the civil RICO claim:

Because a plaintiff must show injury 'by the conduct constituting the violation' of RICO, the injury must be caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts. Moreover, the RICO pattern or acts must proximately cause plaintiff's injury. By itself, factual causation (e.g., 'cause-in-fact' or 'but for' causation) is not sufficient.... For our purposes, the RICO pattern or acts proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence.

*Hecht v. Commerce Clearing House*, 897 F.2d 21, 23 (2d Cir.1990) (citations omitted).

 These defendants raise numerous arguments as to why the RICO claims fail as a matter of law,[3] but plaintiffs have

---

**3.** Of the arguments listed above, the statute of limitations argument requires mention: for RICO claims, a plaintiff has four years from the time at which he discovers or should have discovered the injury. *Bankers Trust v. Rhoades* 859 F.2d 1096, 1103 (2d Cir.1988). Defendants argue that plaintiffs should have discovered the injury at the time the legal fees were disclosed, and thus all claims before March 22, 1990 are barred. This argument overlooks the Second Amended Complaint's allegation that "[p]laintiffs did not know, and could not with reasonable diligence have discovered, the unlawful scheme.... Plaintiffs

complied with the requirements stated here: as to the Bank and Director Defendants, it is alleged that they conducted the affairs of an enterprise engaged in interstate commerce through a pattern of racketeering activity. (*See* Second Am'd Compl. ¶ 67.) Plaintiffs allege that the enterprise was an association in fact consisting of LISB and the Law Firm which functioned for the purpose of facilitating LISB's mortgage business, (*see id.* ¶ 68), that a pattern of racketeering activity consisted in part of a scheme to defraud by means of affirmative representations that the legal fees were genuine and not excessive. (*Id.* ¶ 69.)

There were two or more acts which consisted of mailings (seventeen mailings are listed), in violation of the mail fraud statutes, of various documents in connection with the mortgage loans which contained enumeration of the legal fees. (*Id.*) Plaintiffs allege that the Director Defendants were employed by the enterprise, and that LISB was associated with the enterprise. (*Id.* ¶ 68.) Further, the plaintiffs allege that they were injured by the excessive legal fees, which they would have been unwilling to pay had they known that the excessive fees were being used in part to fund the payments to Conway and his family. (*See e.g. id.* ¶ 74.) Thus the claims are sufficient and defendants' Motion as to these claims should be denied.

## C. TILA Claims

These defendants argue that the TILA claims fail because: (1) they were made after the expiration of the one-year statute of limitations; (2) 15 U.S.C. § 1649 precludes the claims as discussed below; and (3) plaintiffs do not allege any specific violation of the statute or any facts to support such violation.

### 1. Failure to State a Claim

TILA requires that creditors within the meaning of the act disclose to consumers,

were not on notice of any facts relating to the unlawful scheme until March 3, 1994, when the [Office of Thrift Supervision]'s order was

*inter alia,* "the finance charge, not itemized, using that term." 15 U.S.C. § 1638(a)(3) (1998). The term "finance charge" is defined as "the sum of all charges, payable directly or indirectly by the persons to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit," 15 U.S.C. § 1605(a) (1997).

Defendants argue that because they disclosed exactly what the plaintiffs were required to pay, there was no actionable failure to disclose. Plaintiffs argue that a liberal reading of the statute precludes inaccurate disclosure, under language in *N.C. Freed Co., Inc. v. Bd. of Governors of Fed. Reserve Sys.,* 473 F.2d 1210, 1214, *cert. denied,* 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973), which stated that:

> The avowed purpose of the Consumer Credit Protection Act, enacted in 1968 after eight years of Congressional consideration, was to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.' The Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*Id.* at 1214.

Plaintiffs allege that:

> LISB violated its obligation accurately to disclose the finance charge associated with its extensions of mortgage loans to plaintiffs and the members of the class. Specifically, LISB falsely or incorrectly represented the amount it required plaintiffs to pay constituted bona fide

reported in the press; and this class action suit was filed shortly thereafter." (Second Am'd Compl. ¶ 65.)

legal fees for legal services actually performed by the Law Firm for LISB in connection with the mortgage loan transaction when, in fact, portion of such payments were used, directly or indirectly, to fund bribes, kickbacks, and unearned fees to Conway and his family.

(Second Am'd Compl. ¶ 105.) In light of this allegation, and in light of the pronouncement in *Freed, supra,* plaintiffs have stated a claim under TILA and defendants' Motion as to this claim and on this ground should be denied.

### 2. 15 U.S.C. § 1649

This section provides that:

For any consumer credit transaction ... subject to this subchapter, and that is consummated before September 30, 1995, a creditor or any assignee of a creditor shall have no civil, administrative, or criminal liability under this subchapter for, and a consumer shall have no extended rescission rights under section 1635(f) of this title with respect to ...

(3) any disclosure relating to the finance charge imposed with respect to the transaction if the amount or percentage actually disclosed—

(A) may be treated as accurate for purposes of this subchapter if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $200 . . . .

. . .

(C) is greater than the amount or percentage required to be disclosed under this subchapter.

15 U.S.C. § 1649(a) (1998). Defendants argue that because plaintiffs do not allege that they were charged more than the amount disclosed by the Bank, their claim fails. Plaintiffs again argue that TILA is a remedial statute and should be read to include disclosures which, though not greater or less than the amount actually charged, misstated the cost of the services provided. For these arguments and the reasons stated in *Freed, supra,* this statute

should not bar the TILA claim. *Freed,* 473 F.2d at 1214.

### 3. Statute of Limitations

■ TILA provides for a one-year statute of limitations, measured from the date of the occurrence of the violation, for claims thereunder. 15 U.S.C. § 1640(e) (1997). Equitable tolling principles have been held to apply to TILA. *Kerby v. Mortgage Funding Corp.,* 992 F.Supp. 787, 797 (D.Md.1998). Plaintiffs argue that this period is equitably tolled because of the self-concealing nature of the fraudulent scheme, and that the claim relates back to the original pleading under Fed.R.Civ.P. 15(c)(2). In this case, the statute of limitations should be equitably tolled because the facts of the kickback scheme were not available to them before March 3, 1994, when the results of the Office of Thrift Supervision's investigation and order were made known in the press. *See* n. 2 *supra;* (Second Am'd Compl. ¶ 65.)

### D. Fraud Claims

These defendants argue that these claims fail because: (1) they are not pled with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure; (2) the facts alleged do not give rise to fraud; and (3) they are barred by the statute of limitations because the fraud could have been discovered at the time the fees were disclosed.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." FED.R.CIV.P. 9(b). Moreover, "[i]n an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama*

*Holding Co. v. Smith Barney Inc.* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (N.Y.1996). "[T]he New York statute of limitations for fraud is six years from the date of commission, or two years from the date the plaintiff discovered, or should have discovered, the fraud, whichever is longer." *Long Island Lighting Co. v. Imo Indus. Inc.,* 6 F.3d 876, 887 (2d Cir.1993) (citing N.Y.CIV.PRAC.LAW & R. 213(8) (McKinney 1990)).

■ For the reasons stated in n. 2 *supra* that there was no way to discover that the fees were overstated, and because the fees were disclosed after the plaintiffs chose to borrow from LISB, they were not able to avoid overpayment by "shopping around." (*See* Pls.' Mem. in Opp. at 17.) As to Rule 9(b), the facts alleged in the Complaint and discussed in section B., *supra,* are sufficient to delineate a particularized claim of fraud. The statute of limitations argument is again met by the circumstances of the fraud's discovery with the Office of Thrift Supervision's public disclosure on March 3, 1994. Accordingly defendants' Motion on these grounds should be denied.

### E. Breach of Duty

These defendants argue that this claim fails because: (1) there exists no fiduciary relationship between a bank and its borrowers and no facts alleged show any other special relationship; and (2) they are in part time-barred by the three-year statute of limitations.

■ Under New York law, the legal relationship between a borrower and a bank is a contractual one and does not give rise to a fiduciary relationship. *Bank Leumi Trust Co. v. Block 3102 Corp.,* 180 A.D.2d 588, 580 N.Y.S.2d 299, 301 (N.Y.App.Div.1992); *Trustco Bank, Nat. Ass'n v. Cannon Bldg. of Troy Assocs.,* 246 A.D.2d 797, 668 N.Y.S.2d 251, 253 (N.Y.App.Div.1998). However, "[i]n unusual circumstances, a fiduciary relationship may arise even between a bank and a customer if there is either a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding, or an assumption of control and responsibility." *Pinky Originals, Inc. v. Bank of India,* No. 94 Civ. 3568, 1996 WL 603969, *25 (S.D.N.Y. Oct.21, 1996).

It has been held that "a fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation. The existence of a fiduciary relationship cannot be determined by recourse to rigid formulas; rather, New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first." *Scott v. Dime Sav. Bank of New York, FSB,* 886 F.Supp. 1073, 1077, *aff'd* 101 F.3d 107 (2d Cir.1996) (citing *Mandelblatt v. Devon Stores, Inc.,* 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (N.Y.App.Div.1987) & *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 767 F.Supp. 1220, 1231 (S.D.N.Y.1991)).

This claim fails to overcome the rule that there exists no fiduciary relationship between the borrower and bank. The plaintiffs are a class of normal mortgage consumers, none of whom alleges any extraordinary facts regarding their transactions save the excessive fees. Thus the relationships between LISB and each plaintiff did not rise to the level of fiduciary relationship and defendants' Motion as to this claim should be granted.

### F. N.Y.GEN.BUS.LAW CLAIMS

These defendants argue chiefly that this claim fails because: (1) the Banks' actions were not misleading; and (2) most of the claims were made outside of the six-year statute of limitations.

New York law prohibits the use of deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service. N.Y.GEN.BUS. LAW § 349 (1988). "To state a claim under

this section, a plaintiff must allege that (1) defendant has engaged in an act or practice that is deceptive or misleading in a material way, and (2) plaintiff has been injured by reason thereof. The first element requires a showing that a reasonable consumer would have been misled by the defendant's conduct." *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir.1996). Further, injury must be to the public interest generally. *Int'l Sport Divers Ass'n v. Marine Midland Bank, N.A.*, 25 F.Supp.2d 101, 115 (W.D.N.Y.1998). The statute of limitations for claims under this section is six years, or two years after the time a plaintiff discovered, or should have discovered, the fraud. *Dornberger v. Metropolitan Life Ins. Co.*, 961 F.Supp. 506, 549 (S.D.N.Y. 1997).

As to the sufficiency of the claim, plaintiffs allege the facts described in the background section above, and assert that:

> LISB, Conway, the Law Firm, the Law Firm Defendants and the Director Defendants engaged in materially deceptive acts and practices aimed at consumers and the public .... [which] included misrepresenting the ostensible legal fees that LISB required plaintiffs and the members of the class to pay to the Law Firm, and concealing the true nature of those fees.

(Second Am'd Compl. ¶¶ 128, 129.) These allegations are sufficient to state a claim because they allege that a class of consumers was injured by fraudulently excessive fees charged so that in part they could be used to line the pockets of the Bank's CEO and his family.[4] As to the statute of limitations, plaintiffs allege that the scheme

was not revealed until March 3, 1994, whereupon the suit was brought. *See* n. 3 *supra;* (Second Am'd Compl. ¶ 65). This allegation preserves the claim as against LISB and the Director Defendants.

## G. Negligent Supervision

These defendants argue that this claim fails because plaintiffs allege no underlying facts to support it, and because it is barred by the three-year statute of limitations.

"[A]n employer may be required to answer in damages for the tort of an employee against a third party when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm." *Ross v. Mitsui Fudosan, Inc.*, 2 F.Supp.2d 522, 532 (S.D.N.Y.1998) (citing *Kirkman v. Astoria Gen. Hosp.*, 204 A.D.2d 401, 403, 611 N.Y.S.2d 615 (N.Y.App.Div.1994)). Moreover, the statute of limitations for a claim of negligent supervision is three years. N.Y.C.P.L.R. § 214 (McKinney 1990).

As to the sufficiency of the claim, plaintiffs allege the hornbook elements of the tort, (*see* Second Am'd Compl. ¶¶ 132–138), and predicate the claim on the facts described in the background section above. Accordingly the claim survives for the purposes of this Motion. As to the statute of limitations, the claim survives for the reasons described in Section H below.

## H. N.Y. Debtor and Creditor Law Claims

These defendants argue that this claim fails because plaintiffs identify no specific fraudulent conveyance made, and because

---

4. Defendants cite *Sands v. Ticketmaster–New York, Inc.*, 207 A.D.2d 687, 616 N.Y.S.2d 362 (N.Y.App.Div.1994), in which summary judgment was granted on a claim under this section as follows:

> Plaintiff's first cause of action, brought under § 349 ... should have been dismissed. Although plaintiff contends defendant's fees are "excessive", there is no dispute that such fees are always disclosed by Ticket-

master. Therefore, the "challenged business practices" do not "violate the prohibition against deceptive business practices under ... § 349, since the record shows that these practices are fully disclosed prior to [the sale of tickets]"

*Id.* at 363. This holding is distinguishable as having been made on summary judgment but may prove dispositive at the summary judgment stage in this case.

it is time-barred by the applicable statute of limitations.

New York Law provides that "[e]very conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." N.Y. DEBT & CRED. LAW § 275 (McKinney 1990). "Section 275 is a constructive fraud provision which comes into play when a person making a conveyance without fair consideration intends or believes that he or she will incur debts beyond his or her ability to pay them as they mature, and thus said conveyance becomes fraudulent as to both present and future creditors." *Shelly v. Doe,* 249 A.D.2d 756, 671 N.Y.S.2d 803, 806 (N.Y.App.Div.1998).

"Because direct proof of actual intent is rare, creditors may rely on 'badges of fraud' to establish an inference of fraudulent intent. Factors that are considered 'badges of fraud' are (1) a close relationship between the parties to the transaction, (2) a secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4) the transferor's knowledge of the creditor's claim and his or her inability to pay it, (5) the use of dummies or fictitious parties, and (6) retention of control of the property by the transferor after the conveyance." *Id.*

■ This claim is inapposite as a matter of common sense: the statute's purpose is to protect creditors and not debtors, as plaintiffs are here. The situation described in *Shelly, supra,* does not apply here: by the facts alleged in the Second Amended Complaint, LISB was not making fraudulent transfers under the threat of impending bankruptcy in order to avoid future creditors. Accordingly this claim should be dismissed.

In sum, plaintiffs have stated claims as against the Bank and Director Defendants on which relief may be granted in all those claims listed save the Debtor and Creditor Law claim (Section H, *supra*) and the Breach of Duty claim (Section E, *supra*), the Bank and Director Defendants' Motion should be denied, except as to these two claims.

Because under New York law the borrower-bank relationship does not give rise to a fiduciary duty, the breach of duty claim should be dismissed and defendants' Motion as to this claim should be granted. Because plaintiffs do not allege circumstances under which New York Debtor and Creditor Law could apply in this case, the claim should be dismissed and defendants' Motion as to this claim should be granted.

## II. Denise Whalen and Dolores Conway

Defendants Denise Whalen ("Whalen") and Dolores Conway ("Mrs.Conway") move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all claims against them asserted in the Second Amended Complaint.

The Second Amended Complaint naming Whalen and Mrs. Conway as defendants was filed on January 8, 1999. Neither Whalen nor Conway was named in any previous Complaint. It should be noted that in 1998 plaintiffs obtained a Report issued by the law firm of Simpson, Thacher & Bartlett outlining Conway's activities and detailing payments made to Mrs. Conway and Whalen. All other relevant facts are stated above.

Whalen and Mrs. Conway argue three points in favor of their motion to dismiss: (1) the claims against them are time-barred; (2) plaintiffs fail to state a RESPA claim against them;[5] and (3) plaintiffs fail to state a claim against them under New

---

5. As per the notice of dismissal signed on April 21, 1999, Count VII for RESPA violations against Whalen and Mrs. Conway were dismissed. As such, no further discussion is necessary.

York Debtor and Creditor Law §§ 275 and 276.[6]

## A. Statute of Limitations Defenses

Whalen and Mrs. Conway argue that plaintiffs' claims accrued at the time plaintiffs paid the excessive legal fees used to fund the kickbacks and that these claims are now time-barred by the applicable statutes of limitations. Plaintiffs agree that the fraud occurred at the time the excessive legal fees were paid, but contend that their claims did not accrue until March 3, 1994, when plaintiffs learned of the OTS order banning Conway from the banking industry, and consequently of the fraud.

### 1. RICO Claims

As stated in footnote 3, the statute of limitations for a civil RICO claim is four years, *see Agency Holding Corp. et al. v. Malley–Duff & Assoc., Inc.* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), and begins running when the plaintiff discovers, or should have discovered, the injury. *Bankers Trust Co.,* 859 F.2d at 1102. A defrauded party must have either inquiry notice or actual notice of the injury "such that a 'reasonable investor of ordinary intelligence would have discovered the existence of the fraud.' " *In re: Merrill Lynch Ltd. Partnerships Litig.,* 154 F.3d 56, 60 (2d Cir.1998) (citing *Dodds v. Cigna Sec., Inc.,* 12 F.3d 346, 350 (2d Cir.1993)).

■■■ Therefore, a RICO claim ripens when the plaintiff's injury and the subsequent damages resulting therefrom become clear and concrete. *See id.* at 59. However, the statute of limitations on a civil RICO claim tolls if the "plaintiff pleads, with particularity the following three elements: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the claim within the limitations period and (3) due diligence in

pursuing discovery of the claim." *Butala v. Agashiwala,* 916 F.Supp. 314, 319 (S.D.N.Y.1996). The statute may also toll for claims against co-conspirators who did not actively participate in the RICO enterprise where the plaintiff did not remain ignorant of his claim through fault or want of diligence. *See Jerry Kubecka v. Avellino,* 898 F.Supp. 963, 971 (E.D.N.Y.1995).

Plaintiffs' RICO claims as against Whalen are time barred. The fraud in question is alleged to have occurred when the mortgagers paid excessive legal fees at closing. Accordingly, the plaintiffs' claims would have ripened at the time of these closings, the last of which occurred in November 1992. Plaintiffs' RICO claims would be time-barred if the fraud was not concealed by the defendants.

■■■ However, a fraud of this nature is inherently self-concealing, so the statute of limitations should have been tolled until March 3, 1994 when the OTS was filed and plaintiffs learned of their claims. Here the plaintiff's Complaint against Whalen was not filed until January 8, 1999 and accordingly does not meet the four year statute of limitations requirement. Moreover, the *Kubecka* exception does not apply to Whalen because plaintiffs would have discovered her alleged involvement in this scheme when investigating the rest of the Law Firm stockholders.

### 2. Debtor and Creditor Law Claim

N.Y. Debt. & Cred. Law § 276 has a six year statute of limitations. *See Barristers Abstract Corp. v. Caulfield,* 203 A.D.2d 406, 610 N.Y.S.2d 555, 556 (N.Y.App.Div. 1994). While these claims against Mrs. Conway are not time-barred because they were not discovered until August 1998 following the disclosure of the Simpson, Thacher Report, plaintiffs fail to state a claim under this statute as discussed in

---

**6.** The notice of dismissal has eliminated this claim as to Denise Whalen but not as to Mrs.

Conway.

Section (I)(H), and thus the claim should be dismissed.

## B. Relation Back

Defendants argue that plaintiffs' claims against Whalen and Mrs. Conway do not relate back to the date of the original pleading within the meaning of Rule 15(c) of the Federal Rules of Civil Procedure. Rule 15(c) provides in relevant part, that relation back will be allowed when:

> [T]he amendment changes the party or the naming of the party against who a claim is asserted if . . . within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identify of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(3). The Supreme Court has concluded that:

> Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) the party must or should have been known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune,* 477 U.S. 21, 29–30, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). Rule 15(c)(3) may also apply to cases where plaintiffs wish to add a defendant. *See Hood v. City of New York,* 739 F.Supp. 196, 198 (S.D.N.Y.1990). However, the "Second Circuit has held that Rule 15(c) does not permit 'an amended complaint adding new defendants to relate back if

the newly-added defendants were not named originally because the plaintiff did not know their identities.' " *Lettis v. U.S. Postal Serv.,* 973 F.Supp. 352, 361 (E.D.N.Y.1997) (citing *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 470 (2d Cir.1995), *modified,* 74 F.3d 1366 (1996)).

 Plaintiffs' time barred claims against Whalen and Mrs. Conway do not relate back to the original Complaint. It is true that the claims do arise out of the conduct alleged in that Complaint, and because Whalen and Mrs. Conway share a close relationship with Conway and the Law Firm, it is also plausible that Whalen and Conway received adequate notice of this suit. However, it is unlikely that Whalen and Conway would have known that the suit would later name them, or that, but for mistaken identity, the suit would have been brought against them. Furthermore, it is improbable that Whalen and Conway would have made this assumption within the statutory period when plaintiffs had gone through such great lengths to name specific parties. It is similarly doubtful that plaintiffs were ignorant of Whalen and Conway's identities. *See Lettis,* 973 F.Supp. at 361. Accordingly, plaintiffs' time barred claims should not be allowed to relate back to the original Complaint and should be dismissed.

In sum, Whalen and Mrs. Conway's motions to dismiss are granted since plaintiffs claims are untimely and do not relate back to the original Complaint within the meaning of Rule 15(c)(3).

## III. James Conway and the Law Firm Defendants

### A. RICO and Common Law Fraud Claims

Defendants contend that RICO and common law fraud claims must be dismissed as against these defendants because (1) Conway and the Law Firm defendants did not have a duty to disclose to plaintiffs the facts relating to the Bank's legal fees and (2) the alleged misrepresen-

tations were not material. (Mem. in Supp. at 5).[7] As to disclosure, this argument is without merit due to a statutory duty to disclose. For this reason, and for the reasons elaborated upon *supra*, plaintiffs have stated sufficient claims as per RICO and common law fraud against Conway and the Law Firm Defendants.

## B. RESPA Claim

In the Second Amended Complaint, plaintiffs allege the following:

> The legal services ostensibly rendered by the Law Firm in connection with the mortgage loans that LISB extended to plaintiffs and the members of the class constituted "real estate settlement services" involving federally related mortgage loans within the meaning of RESPA.... As a condition of the extension of mortgages to the plaintiffs and members of the class, LISB required plaintiffs and the class to pay the fees of the Law Firm for rendering the real estate settlement services.... By paying a portion of those fees to Conway and his Family as bribes, kickbacks or unearned fees, the Law Firm and the Law Firm Defendants violated 12 U.S.C. § 2607(a) and (b). By accepting or paying a portion of those fees as bribes, kickbacks and unearned fees, or by directing such bribes, kickbacks and unearned fees to others, Conway violated 12 U.S.C. § 2607(a) and (b).

(Second Am'd Compl. ¶¶ 108–111.) As is applicable here, RESPA states:

> (a) No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
>
> (b) No person shall give and no person shall accept any portion, split or per-

centage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan or other than for services actually performed.

RESPA, 12 U.S.C. § 2607(a) & (b) (1989).

It has been noted that "[t]o the extent the thing of value is in excess of the reasonable value of the goods provided or services performed, the excess is not for services actually rendered and may be considered a kickback or referral fee proscribed by RESPA." *Sicinski v. Reliance Funding Corp.*, 82 F.R.D. 730, 732 (S.D.N.Y.1979) (citations omitted). As such, plaintiffs have stated a claim under RESPA.

## C. N.Y.Gen.Bus.Law Claims

For the reasons stated *supra* in Section (I)(F), plaintiffs have stated a viable claim under N.Y.Gen.Bus.Law § 349 as against Conway and the Law Firm Defendants.

## D. N.Y. Debt. and Cred. Law Claims

As stated *supra* in Section (I)(H), plaintiffs have failed to state a claim under N.Y. Debtor and Creditor Law §§ 275 and 276 and thus the claim should be dismissed against Conway and the Law Firm Defendants.

## CONCLUSION

To conclude, since plaintiffs have stated claims as against the Bank and Director Defendants on which relief may be granted in all those claims listed save the Debtor and Creditor Law claim and the breach of duty claim, the Bank and Director Defendants' Motion should be denied, except as to these two claims. Whalen and Mrs. Conway's Motion to dismiss is granted since plaintiffs claims are untimely and do not relate back to the original Complaint

---

**7.** As discussed in Sections (I)(B) and (I)(D) these alleged misrepresentations were indeed material.

within the meaning of Rule 15(c)(3). As to Conway and the Law Firm defendants, their Motion to dismiss as to the RICO and common law fraud claims, RESPA, and N.Y.Gen.Bus.Law are denied. Their Motion to dismiss as to the N.Y. Debt. and Cred. Law claim is granted.

SO ORDERED.