Ronnie WEIL a/k/a Ronnie
Moore, et al., Plaintiff,

v.

The LONG ISLAND SAVINGS BANK,
FSB, et al., Defendants.

No. 94–CV–1292(TCP)(WDW).

United States District Court,
E.D. New York.

Jan. 16, 2002.

John B. Amrod, Amrod & Ricci, Garden City, NY, Louis Aloysius Jr. Craco, Jr., Davis Weber & Edwards, P.C., New York City, for Plaintiff.

Russell E. Brooks, Milbank, Tweed, Hadley, McCloy, Paul F. Corcoran, Davis & Gilbert, Joel Cohen, Stroock & Stroock & Lavan LLP, Thomas P. Puccio, New York City, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

The Plaintiffs, the Bank Defendants[1] and the Director Defendants[2] jointly move pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for approval of a settlement ("Settlement") agreed to by lead Class counsel ("Hogan & Hartson"), Co–Class counsel ("Amrod") (collectively "Class Counsel") and counsel for the Bank Defendants and Director Defendants (collectively "Defense Counsel"). For the reasons stated below, this motion is granted and the Settlement is approved.

## BACKGROUND

### A. Generally

This class action lawsuit was commenced on behalf of a Class of persons who allegedly paid inflated legal fees to a law firm in connection with closings on residential mortgage loans obtained from the Long Island Savings Bank, FSB ("LISB") from January 1, 1983 to December 31, 1992. *Weil v. Long Island Savings Bank*, 200 F.R.D. 164, 167 (E.D.N.Y.2001).

The alleged scheme went as follows. Class members were required to pay, directly to the law firms of Power, Meehan & Petrelli, P.C. and Power, Meehan and Power, P.C., the legal fees LISB incurred in processing and closing the mortgagors' loans. *Id.* at 167. The aforementioned law firms were the successors in interest to Conway & Ryan, P.C., which was James J. Conway, Jr.'s ("Conway") former law firm. *Id.* Conway was LISB's Chief Executive Officer during the Class period. *Id.*

Part of the allegedly inflated legal fees Class members paid were used by the law firms to fund kickbacks to Conway and his family members. *Id.* Those kickbacks were paid to Conway in return for his promise that LISB would use only his law firm and its successors in interest to perform LISB's residential mortgage loan legal work. *Id.* Accordingly, it was claimed that the Class members paid inflated legal fees to LISB's law firms in order to fund an illegal kickback scheme, the primary beneficiary of which was Conway.

On March 23, 1994, Plaintiffs brought this action, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, the Truth–In–Lending Act ("TILA"), 15 U.S.C. § 1638, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607, common law fraud, violations of section 349 of the New York General Business Law, and negligent supervision.

On November 15, 1999, this Court partially denied and partially granted Defendants' Motion to Dismiss. *Weil v. Long Island Savings Bank*, 77 F.Supp.2d 313, 316 (E.D.N.Y.1999). On May 7, 2001, the Court certified a plaintiffs' Class consisting of residential mortgage borrowers who closed their mortgage loans between January 1, 1983 and December 12, 1992. *Weil v. Long Island Savings Bank*, 77 F.Supp.2d 313, 316 (E.D.N.Y.1999).

Following that Order, the parties accelerated settlement negotiations. On November 7, 2001, they executed a proposed settlement agreement ("Proposed Settlement"), the terms of which are substantially identical to those contained in the final

---

1. The Bank Defendants are: (1) the Long Island Savings Bank, FSB; (2) the Astoria Financial Corporation; and (3) the Astoria Federal Savings & and Loan Association.

2. The Director Defendants are: (1) Bruce M. Barnet; (2) Troy J. Baydala; (3) Clarence M. Buxton; (4) Edwin M. Canuso; (5) Richard F. Chadelaine; (6) John J. Conefry, Jr.; (7) Brian J. Conway; (8) Robert J. Conway; (9) Frederick De Matteis; (10) George R. Irvin; (11) Lawrence W. Peters; (12) Robert S. Swanson, Jr.; (13) James B. Tormey; (14) William E. Viklund; (15) Leo J. Waters; (16) Seth H. Waugh; and (17) Donald D. Wenk.

settlement discussed below. On November 13, 2001, the Court ordered notice of the Proposed Settlement to be mailed to Class members.

On December 21, 2001, the Court conducted a public hearing to determine if the Proposed Settlement was fair, adequate and reasonable. The Court heard from all interested parties and took objections from Class members.[3] Having heard from the interested parties and Class members, the Court is now prepared to approve the Settlement as fair, adequate and reasonable.

## B. Settlement Structure

The Settlement calls for the Defendants to create and fund an account ("Settlement Fund") to be administered by a claims administrator ("Claims Administrator"). The Settlement Fund will be used to satisfy Class members' claims, expenses and fees submitted by the Claims Administrator, and fees and expenses awarded to Class Counsel.

Under the Settlement, Defendants will pay a minimum of $265,000 plus any fees and expenses awarded to Class Counsel into the Settlement Fund within three days of the entry of this Order. The Defendants will then pay the balance of any sums needed to satisfy Class members' claims within five days of entering an order approving the Claims Administrator's final report. The total amount the Defendants will pay into the Settlement Fund is limited to $15 million.

## C. Distribution of Settlement Fund Monies to Class Members

Class members who submit acceptable documentation to the Claims Administrator will be paid a settlement award equal to the amount by which the legal fees they

3. The objections interposed by Class members were directed primarily at the proposed attor-

paid to Conway's law firm and its legal successors exceed agreed upon appropriate closing costs for the Class period ("Appropriate Closing Costs"). The Appropriate Closing Costs are listed in the chart below. Essentially, Class members receive 100% of any excess legal fees they paid, but do not receive any interest on that excess.

| Appropriate Closing Costs for the Class Period | |
| --- | --- |
| Years | Appropriate Closing Costs |
| 1983 to 1984 | $350.00 |
| 1985 to 1990 | $400.00 |
| 1991 to 1992 | $450.00 |

In addition to a settlement award, individual named plaintiffs will also receive a $10,000.00 incentive award for the extra time and effort they expended in prosecuting this case. Named plaintiffs who are couples will receive a total incentive award of $15,000.00 per couple. The Settlement requires the Claims Administrator to pay these incentive awards immediately after the Settlement Fund is financed.

Class members must submit acceptable documentation to receive a settlement award. Acceptable documentation constitutes a signed proof of claim and release and one document from either column A or column B in the chart below.

| Documents to be Submitted by Class Members with the Proof of Claim and Signed Release | |
| --- | --- |
| Column A | Column B |
| 1. Copy of check written to the Law Firm | 1. Copy of the mortgage agreement |
| 2. Invoice of payment from the Law Firm | 2. Copy of the mortgage note |
| 3. Copy of Class member's HUD–1 Settlement Statement | 3. Affidavit swearing that none of the aforementioned documents can be located and identifying the year of the closing, the amount of the mortgage and the address of the mortgaged property |

\* Conway & Ryan, P.C. and its legal successors

neys' fees. Attorneys' fees will be addressed in a separate opinion.

Class members who submit documents from Column B lack direct proof of the legal fees they were charged. Accordingly, the parties have agreed that the legal fees for Class members who submit documentation from Column B will be determined by taking 1% of the first $50,000.00 of their mortgage loans and adding it to 0.5% of any excess amount of the loan above $50,000.00. The resulting figure can never be less than $250.00 or more than $750.00.

Class members submitting documentation from Column B who closed their loans after September 30, 1992 will be deemed to have paid $450.00 in legal fees. Only Class members whose mortgage loans were secured by property located in Nassau, Suffolk, New York, Kings, Queens, Richmond, Bronx Westchester or Rockland counties may recover if submitting documentation from Column B.

Class members must submit all required documentation on or before June 30, 2002 to recover a settlement award. Class members may not recover if any required documentation is postmarked or submitted after that date. Class members are entitled to receive their Settlement Awards within thirty days after the entry of a final order approving the Claims Administrator's final report.

### D. Attorneys' Fees

The Settlement contemplates that up to $5 million of the total Settlement Fund will be paid to Class Counsel in legal fees. Up to $600,000.00 of the total $15 million will be paid to Class Counsel to cover reasonable out of pocket expenses it incurred in funding the litigation. Specific attorneys' fees will be awarded in another order.

### E. Claims Administrator's Duties, Fees and Expenses

The Claims Administrator is required to file two interim reports with Class Counsel and Defense Counsel that outline the amount of payments made and to whom. These interim reports are to be filed on February 15, 2002 and April 15, 2002.

The Claims Administrator must then deliver a final report to Class Counsel and Defense Counsel after June 30, 2002. That final report must outline all payments made to Class members and any additional expenses the Claims Administrator expects to incur in the final distribution of settlement awards.

The Settlement also calls for the Claims Administrator's fees and expenses to be satisfied out of the Settlement Fund. The Claims Administrator will submit invoices for costs directly to the Court. Class Counsel, Defense Counsel or the Court may object to any such invoice within ten days of its submission.

The Claims Administrator will submit invoices for fees to Class Counsel, Defense Counsel and the Court every thirty days. Class Counsel, Defense Counsel or the Court may object within ten days to any such invoice.

### F. Reversion Fund

The Settlement states that any monies remaining in the Settlement Fund 120 days after the Claims Administrator pays out the final settlement awards will revert back to the Defendants. These reversion funds will be distributed to the Defendants pro rata in a percentage equal to the Defendants' contributions of all funds.

### G. Notice to Class Members

Notice was sent to all Class members on or before November 14, 2001 by first class mail to their last known addresses. Notice of the Settlement was also published in both *Newsday* and *The Daily News* for six

days over a two week period beginning on November 19, 2001.

## DISCUSSION

### A. Class Action Settlements

■■■ Parties may not settle class action lawsuits without court approval. FED. R.CIV.P. 23(e). Courts may not approve class action settlements unless the settlement is fair, adequate, reasonable and not the product of collusion. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *Joel A. v. Giuliani*, 218 F.3d 132, 138–39 (2d Cir.2000). District Courts determine whether a settlement is fair, adequate and reasonable by reviewing: (1) the negotiating process that produced the settlement; and (2) the settlement's substantive terms. *D'Amato*, 236 F.3d at 85.

District Courts first review the negotiating process that produced the settlement to ensure: (1) that the settlement was the product of arm's length negotiations; and (2) that Class Counsel " 'possessed the experience and ability, and ... engaged in the discovery, necessary to effective[ly] represent[ ] ... the class's interests.' " *Id.* (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir.1982)). This certifies that the settlement is procedurally fair, adequate and reasonable.

Once the court determines that the settlement is procedurally fair, adequate and reasonable, it then considers the settlement's substantive fairness. *Id.* The factors that determine if a settlement is substantively fair, adequate and reasonable ("*Grinnell* Factors") are:

(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Id.* (quoting *County of Suffolk v. Long Island Lighting*, 907 F.2d 1295, 1323–24 (2d Cir.1990) (internal citations omitted)); *see Joel A.*, 218 F.3d at 138–39; *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

If the court determines that a settlement is both procedurally and substantively fair, it may deem the settlement to be fair, adequate and reasonable. The court must then verify that the settlement was not the product of collusion before it may certify and approve the settlement. *D'Amato*, 236 F.3d at 85.

### B. Procedural Fairness

■■■ The Settlement is procedurally fair. First, it is the product of arm's length negotiations. The parties conducted their first settlement discussions on November 24, 1998. (Edwards Decl. In Supp. Pls.' App. for Settlement ¶ 8.) They met again on December 14, 1999, October 4, 2000, December 21, 2000,[4] January 31, 2001[5] and October 18, 2001[6] to discuss

---

4. Only Class Counsel, counsel for the Bank Defendants and Conway's counsel, Thomas Puccio, were present at that meeting. (Edwards Decl. In Supp. Pls.' App. for Settlement ¶ 12.)

5. This conference was held before Magistrate Judge Wall. (Edwards Decl. In Supp. Pls.' App. for Settlement ¶ 13.)

6. This meeting was less formal and apparently did not involve Amrod. (Edwards Decl. In Supp. Pls.' App. for Settlement ¶ 16.)

settlement. (Edwards Decl. In Supp. Pls.' App. for Settlement ¶¶ 12–13, 16.) They considered a range of settlement figures and structures, utilized United States Magistrate Judge William D. Wall to direct their negotiations, and finally agreed upon the current terms after significant wrangling. Neither party enjoyed a domineering negotiating position, and neither wielded unfair influence over the other party. Accordingly, the Settlement was freely bargained for.

Secondly, Class Counsel " 'possessed the experience and ability, and . . . engaged in the discovery, necessary to effective[ly] represent[ ] . . . the class's interests.' " *D'Amato*, 236 F.3d at 85. (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir.1982)). Mr. Edwards and Mr. Amrod are skilled and seasoned attorneys, and both Hogan & Hartson and Amrod & Van der Waag are well respected firms.

Moreover, Class Counsel conducted over fifty depositions, handled hundreds of thousands of documents, reviewed computerized databases containing information about the 36,000 Class members, served interrogatories and requests for admission, and produced expert reports. (Edwards Decl. In Supp. Pls.' App. for Settlement ¶ 4.) Class Counsel was sufficiently educated about the strengths and weaknesses of its case to broker a settlement.

Accordingly, because the parties engaged in arm's length negotiations, and because Class Counsel was amply skilled and fully informed by adequate discovery, the Settlement is procedurally fair.

### C. Substantive Fairness

■ The *Grinnell* Factors direct that the Settlement is also substantively fair, adequate and reasonable. *See D'Amato*, 236 F.3d at 85.

### 1. Complexity, Expense and Likely Duration of the Litigation

This a complex case. The parties argued a highly contested Motion to Dismiss and fought numerous discovery disputes that addressed novel questions of law. Complicated damage calculations were also made.

The case would be expensive to try. Class Counsel has already incurred significant administrative expenses and would invite more at trial. Moreover, the legal fees, which are already substantial (but reasonable), would materially increase with trial.

A trial in this case would also certainly be protracted. There are multiple claims involved, and several witnesses would have to be called. Based on the present duration of the litigation, it is not unreasonable to assume that the trial would be proportionally lengthy.

Accordingly, the complexity, expense and potential length of a trial favor settlement.

### 2. The Reaction of the Class to the Settlement

The Class has reacted favorably to this settlement. Only two Class members chose to object at the Fairness Hearing, and neither objection focused on the recovery for Class members. Moreover, to date, the Court is only aware of thirty-three Class members who opted out of the Settlement, which is a de minimis number. Therefore, the Class appears to approve of the Settlement.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

The stage of the proceedings and the amount of discovery completed suggest that the Settlement represents an educat-

ed evaluation of the relative strengths and weaknesses of the parties' cases. Discovery is concluded, and the parties are in a position to make informed settlement judgments. Accordingly, settlement is appropriate.

### 4. The Risks of Establishing Liability and The Risks of Establishing Damages

It is axiomatic that anything can happen at trial. While Conway's liability was already established in another proceeding, the current action is by no means an open and shut case. Plaintiffs still must prove that they were fraudulently deceived into paying fees they voluntarily accepted, and that these defendants are responsible.

Moreover, Defendants have persuasively argued that the Class members did not suffer a compensable loss because they voluntarily chose to pay the inflated closing costs, and were therefore not harmed. Accordingly, the Class might have trouble proving damages at trial and is better off settling.

### 5. The Risks of Maintaining the Class Action Through the Trial

The risks of maintaining the Class Action through trial also favor settlement in this case because Defendants have appealed the Class Certification Order. While the Court is confident that it decided the Class Certification Motion correctly, there is no guaranty the Second Circuit will agree. Accordingly, this factor favors settlement.

### 6. The Ability of the Defendants to Withstand a Greater Judgment

Astoria Federal, LISB's successor in interest, is a well capitalized bank that could probably withstand a greater judgment. However, a treble damage award on Plaintiffs' RICO claim could be so serious that it might impair Astoria Federal's capital ratios. Accordingly, this factor is inconclusive.

### 7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

These two factors favor approving the Settlement. Under the Settlement, Class members will receive 100% of the excess they paid over the agreed upon Appropriate Closing Costs. This recovery approximates total restitution, which is unprecedented.

The best possible recovery would permit Class members to collect treble damages on the RICO claim and interest on their award. While that recovery could be substantially greater than the current one, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir.1974).

Moreover, in light of the difficulty of proving a RICO claim, a potential treble damages award is speculative. Foregoing interest is also a reasonable compromise for the security of a settlement. Accordingly, because the Settlement permits for almost total recovery for the Class members, and because the proposed recovery is attractive in light of the attendant risks of trial, the Settlement is reasonable.

Therefore, all the *Grinnell* Factors, save one, favor settlement. That one factor is merely inconclusive. Accordingly, under the *Grinnell* Factors, the Settlement is substantively fair, adequate and reasonable.

### D. Collusion

There is nothing to indicate that this settlement was reached through collusion. *See D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir.2001); *Joel A. v. Giuliani,* 218 F.3d 132, 138–39 (2d Cir.2000). The parties litigated and negotiated vigorously as adversaries. The Settlement is the product of that process. Accordingly, there was no collusion.

### CONCLUSION

The Settlement is fair, adequate and reasonable. It is not the product of collusion. Therefore, the Court approves the Settlement. The Court will address the award of attorneys' fees in a separate opinion.

SO ORDERED.